UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Thomas F. Weeks, Jr.


        v.                          Civil No. 10-cv-336-JD
                                    Opinion No. 2010 DNH 165

Wal-Mart Stores, Inc.


O R D E R


    Thomas F. Weeks, Jr. brings claims of wrongful discharge and
breach of the covenant of good faith and fair dealing against his
former employer, Wal-Mart Stores, Inc.  Wal-Mart moves to dismiss
Weeks's claims, contending that Weeks cannot show the public
policy element required by both claims.  Weeks objects to the
motion to dismiss his wrongful discharge claim but agrees to
dismiss his claim for breach of the covenant of good faith and
fair dealing.


Standard of Review

    In considering a motion to dismiss pursuant to Federal Rule
of Civil Procedure 12(b)(6), the court accepts as true the well-
pleaded allegations in the complaint and makes reasonable
inferences in the plaintiff's favor.  Martino v. Forward Air,
Inc., 609 F.3d 1, 2 (1st Cir. 2010).  To avoid dismissal, "a
complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The
plausibility standard does not require a probability but is more
than a mere possibility.  Ashcroft v. Iqbal, 129 S. Ct. 1937,
1949 (2009).  The plaintiff must allege more than legal
conclusions, unsupported accusations, and "'formulaic
recitation[s] of the elements of a cause of action.'"  Id.
(quoting Bell, 550 U.S. at 555).

<u>Background</u>

Weeks worked at Wal-Mart as a technician for the truck fleet
from January of 2002 until he was terminated on August 20, 2007.
Weeks worked the third shift, which operated without a shift
supervisor on site, although Weeks's immediate supervisor was
Phil McRoberts.  From the time Weeks started working at Wal-Mart,
a co-worker, J. Lee, harassed him, which included "berating
[Weeks], making derogatory comments about his work, telling
[Weeks] he was stupid, incompetent, unable to make correct
decisions, and generally nit-picking everything [Weeks] did."
Compl. ¶ 8.

In November of 2004, Weeks reported Lee's actions to their
supervisor, McRoberts.  Lee's harassment increased over the next
few days, and Weeks told McRoberts that the problem had not

2

stopped.  McRoberts replied that he had talked with Lee and that there was nothing more he could do.

Weeks witnessed Lee's harassment of other employees, including one man who made an error while being harassed by Lee and was terminated.  Weeks reported the circumstances to McRoberts who did nothing.  Weeks continued to report Lee's inappropriate behavior to McRoberts on a monthly basis.

In an incident during the winter of 2004, Weeks could not find a tire for a truck that needed service and used a tire that he would otherwise not have used.  After the driver left, Lee informed Weeks that he had the appropriate tire in his bay and that Weeks should have used that tire.  Weeks said he did not know the tire was there.  Lee continued to argue about Weeks's actions until Weeks told Lee he was through with the conversation and would address the problem with McRoberts.  Lee then began yelling and swearing at Weeks.  Weeks reported Lee's actions to McRoberts but no changes occurred.

On July 1, 2007, Lee approached Weeks, accompanied by the second shift supervisor.  Lee slapped Weeks on the back and poked him in the shoulder, yelling "F***-head, quit your crying."  When Weeks asked the supervisor if he was going to do anything, the supervisor shrugged his shoulders.  The next morning, Weeks reported the slapping incident to McRoberts who said that Lee

3

would be spoken to.  Weeks was upset because nothing had been done about Lee's actions.

On July 20, 2007, Weeks asked McRoberts if anything had been done about the incident with Lee and whether McRoberts had talked with the supervisor who witnessed the incident.  McRoberts refused to answer.  Weeks told McRoberts that he was going to report the situation to the human resources department, and Weeks did discuss the incident and the lack of response with "Julie" in the human resources department.

On August 8, 2007, Weeks was summoned to another supervisor's office, where Julie from the human resources department and security guards were present.  They informed Weeks that they had heard that Weeks planned to kill Lee.  Weeks said he had said things in angry response to Lee's harassment but denied that he intended to kill Lee.  The supervisor asked Weeks to write a statement of what had happened, which Weeks did.

Wal-Mart informed Weeks on August 13, 2007, that he was suspended for a week while they investigated the situation. Weeks's employment with Wal-Mart was terminated on August 20, 2007.

Discussion

Weeks alleges wrongful termination, contending that Wal-Mart terminated his employment in retaliation for his complaints about Lee.  Wal-Mart moves to dismiss Weeks's wrongful discharge claim on the ground that Weeks failed to allege facts to support the public policy element of a wrongful discharge claim.  Weeks objects, arguing that his allegations that he was terminated because of his complaints about being harassed and assaulted satisfy the elements of wrongful discharge.

To allege wrongful discharge under New Hampshire law, a plaintiff must provide facts that show "(1) his termination was motivated by bad faith, retaliation or malice; and (2) that he was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn."  MacKenzie v. Linehan, 158 N.H. 476, 480 (2009).  Public policy, as used for purposes of wrongful termination, can be based on both statutory and nonstatutory policies.  See Karch v. BayBank FSB, 147 N.H. 525, 537 (2002).  A wrongful discharge claim cannot rest on violation of a public policy for which there is a preempting statutory remedy.  See Wenners v. Great St. Beverages, Inc., 140 N.H. 100, 103-05 (1995); see also Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 429 (1st Cir. 1996). Generally, the public policy question is a matter for the jury

unless the plaintiff fails, as a matter of law, to articulate a cognizable public policy that was violated by his termination. Short v. School Admin. Unit No. 16, 136 N.H. 76, 84 (1992).

In his complaint, Weeks alleges that he "suffered continued harassment and retaliation as referenced herein, which was causing an unsafe and hostile work environment. Plaintiff complained about said environment, which included an assault on or about the time of his discharge." Compl. ¶ 29. Weeks states that his "complaints were supported by various public policies including being free from assaults and a hostile work environment." Id. He further alleges that "[a]s a result of Plaintiff's complaints, and in retaliation therefore, Defendant fired Plaintiff." Compl. ¶ 30.

A.   Statutory Remedy and Preemption

Wal-Mart contends that Weeks's reliance on a public policy to protect workers from harassment, retaliation, and a hostile work environment is barred by statutory remedies. Wal-Mart states, "[t]o the extent these vague allegations constitute a reference to the public policy embodied in the various Federal and New Hampshire laws, such as Title VII, that prohibit hostile work environments and other forms of discrimination and retaliation in the workplace, Plaintiff fails to state a claim."

Motion at 4.  Other than the reference to Title VII, Wal-Mart fails to identify any federal or state law remedies that preempt the public policy Weeks alleges.

As presented, Wal-Mart's preemption argument falls far short of the analysis necessary to support that theory.  <u>See, e.g.</u>, <u>Bliss v. Stow Mills, Inc.</u>, 146 N.H. 550, 553-54 (2001); <u>Dolan v. SunGuard Sec. Fin., LLC</u>, 2008 WL 90019, at *12 (D.N.H. 2008); <u>Cook v. CTC Commc'ns Corp.</u>, 2007 WL 3284337, at *14 (D.N.H. 2007).  The only statutory scheme Wal-Mart identifies is Title VII.  Title VII, however, provides a remedy for adverse employment actions that are discriminatory based on race, color, religion, sex, or national origin.  <u>See</u> 42 U.S.C. § 2000e-16(a); <u>Morales-Vallellanes v. Potter</u>, 605 F.3d 27, 35 (1st Cir. 2010); <u>Rosario v. Dep't of Army</u>, 607 F.3d 241, 246 (1st Cir. 2010). Because Weeks alleges nothing pertaining to discrimination or retaliation based on a statutorily protected ground, Title VII does not apply.

B.  <u>Cognizable Public Policy</u>

Wal-Mart also asserts that the alleged public policy of being free from assaults and a hostile work environment is insufficient because the treatment Weeks received was not sufficiently severe.  The cases Wal-Mart cites, however, pertain

7

to determining whether an "adverse employment action" occurred for purposes of claims under the Age Discrimination in Employment Act and Title VII.  Because neither statute is at issue here, the cited analysis of adverse employment action is inapplicable.

In addition, Weeks alleges that his employment was terminated in retaliation for his complaints about Lee's conduct and the lack of response by his supervisors.  He further alleges that public policy would support his complaints about his treatment, which on one occasion amounted to an assault, so that Wal-Mart's action of terminating him because of his complaints was taken in violation of public policy.

At this stage, the court takes the well-pleaded allegations in the complaint as true.  To the extent Wal-Mart attempts to rely on the results of its investigation into Weeks's complaints to oppose his claim, that is not an appropriate basis for a motion under Rule 12(b)(6).  Weeks has alleged a sufficient public policy basis for his wrongful discharge claim to avoid dismissal at this early stage of the case.

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion to dismiss (document no. 4) is denied.  The plaintiff voluntarily dismisses his claim for breach of the covenant of good faith and fair dealing, which is dismissed without prejudice under Federal Rule of Civil Procedure 41(a)(1).  The only claim remaining in the case is wrongful discharge.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

September 16, 2010

cc:  Leslie H. Johnson, Esquire
     Christopher B. Kaczmarek, Esquire